Garling *vs.* Baechtel, *et al.*

(Decided 15th January, 1875.)

---

# PETER GARLING *vs.* HENRY S. BAECHTEL, and others, trading as BAECHTEL & CO.

*Extent of the Individual liability of a Stockholder of a Manufacturing company, to a Creditor of the company, under Art. 26, sec. 52 of the Code— What does not constitute an Estoppel— By what acts a Stockholder is Estopped from denying his Individual liability for a Debt due by the Company—Right of a Creditor of a Manufacturing company to sue a Stockholder at Law, not affected by a suit in Equity previously instituted by another Creditor in behalf of himself and others—Admissibility of Evidence.*

A manufacturing company was formed under Art. 26 of the Code, and by the articles of association the capital stock was fixed at fifteen hundred shares of the par value of $100 per share, but only nine hundred and sixty shares were taken. Upon this partial subscription of the capital stock, the com-

pany undertook to organize, and in carrying on its business incurred debts. Suit was brought under section 52 of the Article of the Code, under which the company was formed, to recover of a stockholder for a debt thus incurred. It appeared that the defendant originally subscribed for fifteen shares of the par value of $1500, but subsequently at the first meeting of the board of directors, at which he attended, and before the debt due to the plaintiffs was contracted, applied to have his subscription reduced from fifteen to ten shares. One of the plaintiffs was a member of the board of directors, and was present when this application was made. It was assented to without objection, and the defendant paid his subscription in full, and received a certificate for ten shares, and at the only meeting of the stockholders at which he voted, he was permitted, and only claimed the right as a stockholder, to vote ten shares. HELD:

That the liability of the defendant should be limited to the ten shares of stock of the value of $1000, after deducting therefrom such sum or sums of money as he might have been compelled to pay as a stockholder to other creditors of the company, and the amount or amounts of such judgments as they might have obtained against him.

The mere fact that a stockholder in a manufacturing company, formed under Art. 26 of the Code, pays his subscription knowing that the whole capital stock has not been paid in, and that the company is incurring debts for property and materials, is not such an act of participation as will estop him, when sued by a creditor of the company, from setting up as a defence the partial subscription of the capital stock.

Where a stockholder in a manufacturing company, formed under Art. 26 of the Code, with knowledge that the capital stock of the company has not been fully taken and subscribed for, participates in the affairs of the company, attends the meetings of the stockholders, knows that the company is engaged in business, purchasing property and incurring liabilities, he will be estopped in an action against him to enforce his individual liability for a debt due by the company, from pleading a partial subscripton of the capital stock; but the debt must have been contracted on the faith of some act or acts, or participation on his part, to estop him from setting up such defence.

In an action by a creditor of a manufacturing company formed under Art. 26 of the Code, brought against a stockholder to enforce his individual liability for the debt contracted by the company, the fact that another creditor has filed a bill in equity against the stockholders of the company, in behalf of himself and other creditors who may come in and contribute to the expenses of the suit, in no manner affects the right of the plaintiff to maintain his action at law against the defendant.

In an action brought by a creditor of a manufacturing company, formed under Art. 26 of the Code, on a bond signed by the president, secretary and treasurer of the company, and issued to the plaintiff, the bond is admissible in evidence for the purpose of proving an acknowledgment of an indebtedness on the part of the company to the plaintiff; and the minutes of proceedings of the stockholders are admissible to prove the circumstances under which the bond was issued.

APPEAL from the Circuit Court for Washington County.

This suit was brought by the appellees under the provisions of sec. 52 of Art. 26 of the Code, on a bond for $500 issued to them by the Antietam Manufacturing Company of Washington County, to recover of the appellant individually as a stockholder of the company, the amount of said bond. The defendant pleaded specially, that before the issuing of the writ in this cause, he, with all the other stockholders of the said Antietam Manufacturing Company, was sued in the Circuit Court for Washington county, as a Court of Equity, by a certain Henry Tritch, who filed his bill of complaint therein on the 15th of February, 1871, as a creditor of said Company, and in behalf of himself and all other creditors of the Company, who would come in and be made parties thereto; that said suit in Equity was still pending, in which the defendant was liable to a decree for his proportion of indebtedness to all the creditors of the Company.

To this plea the plaintiffs demurred, and the Court, (MOTTER, J.,) sustained the demurrer; and leave being given to the defendant to file other pleas, he pleaded that he never was indebted as alleged; that he never was a subscriber for fifteen shares of the capital stock of the Antietam Manufacturing Company; that he did not receive a certificate for fifteen shares of the capital stock of said company; that the alleged cause of action against the defendant did not accrue within three years before the bringing of this suit; that the bond sued on in this action, was given by the Antietam Manufacturing Company to the

plaintiffs, and received by them in payment, satisfaction and discharge of a claim or account which the said plaintiffs had at that time against the company, and the plaintiffs thereby, and at that time released the defendant from any liability as an individual for the payment of said claim or account, and received the said bond and its securities in lieu thereof; and further, that a certain J. H. Beachley, on the 24th of March, 1874, being a creditor of the said company, obtained a judgment by confession in the Circuit Court for Washington county, against the defendant as a stockholder in said company for $481..00 and costs of suit. The plaintiffs replied and issue was joined.

*First Exception.*—The plaintiffs at the trial of the cause, gave in evidence the certificate of incorporation of the Antietam Manufacturing Company of Washington county, and then proved that the capital stock of the company was fixed at $150,000, of which only about $90,000 was subscribed, and about $76,000 paid up. They then gave in evidence said certificate to prove that the defendant was a subscriber for fifteen shares of the capital stock of the company. They then offered in evidence the bond of the company for $500, on which the suit was brought, payable to the plaintiffs or their assigns, on the 1st of January, 1872, with interest from date. The bond was dated the 1st of December, 1868, and signed by the president, secretary and treasurer of the company, with the seal of the company affixed. They then offered in evidence the minutes of the proceedings of a meeting of the stockholders of the company, held on the 10th of October, 1868, at which the financial affairs of the company were discussed and the president and the board of directors were authorized to raise the sum of $60,000, and for the purpose of raising such sum of money, they were further authorized and directed to issue the bonds of the company in sums of not less than $100, and not more than $1000, each bearing such interest as to

them should appear most expedient, not to exceed nine per cent. per annum, &c. To the admission in evidence of the aforesaid bond and minutes of proceedings, the defendant objected : but the Court, (MOTTER, J.,) overruled the objection and allowed them to be given in evidence. The defendant excepted.

*Second Exception.*—The plaintiffs proved that the defendant attended one or two meetings of the stockholders of the company, and that he was present at a meeting of the board of directors of the company, on the 16th July, 1867, at which meeting he paid the first instalment of twenty-five per cent. on his stock, or the sum of $250.00, and that subsequently he paid the other instalments or calls, amounting in all to the sum of $1000 ; that the company commenced putting up the buildings in July or August, 1867, and completed them in the following winter. The plaintiffs also gave evidence tending to show, that at the meeting on the 16th July, 1867, the affairs and condition of the company, and the intention of the directors were discussed in the presence of the defendant; and that on the 14th June, 1868, he attended a meeting of the stockholders, and there voted for president and directors, and at this meeting was made an exhibit and statement of the affairs of the company, showing that the amount of capital stock fixed in the charter was $150,000 ; the amount subscribed, $90,600.00 ; the amount paid in, $68,000.00 ; and the debts of the company, about $89,300.00, and that after this meeting, to wit, July 14th, 1868, the defendant paid up his last instalment on his subscription of $1000, and afterwards attended a meeting of the stockholders, at which the statement of the affairs of the company showed subscriptions to the amount of $96,000, and an indebtedness largely in excess of the amount of capital stock subscribed. That at this meeting of the 13th February, 1869, the proposition for an increase of stock was discussed, and the necessity of more money was considered, and the

defendant, with other stockholders then present, signed a
resolution or proposition, looking to the increase of their
subscriptions, upon certain conditions, which were not
afterwards complied with, and hence the proposition so to
increase their subscriptions did not obtain.

The defendant then proved, that on the 16th July, 1867,
he appeared at the meeting of the board of directors,
before given in evidence, and through James H. Grove,
Esq., a member of the board, and the attorney for the
same, applied to be released of five shares and five hundred
dollars of his original subscription to the stock of the
company; that Marcus McDowell, one of the plaintiffs,
and then a member of the firm. of the plaintiffs, was a
member of the board of directors, and one of the building
committee, and present when the application was made;
that the application was made and assented to without
objection from any one, but that no vote was actually taken
upon the proposition.

And further, that subsequently the defendant was only
required to pay calls or assessments on ten shares, or $1000
of said stock, and that he paid up the said $1000 in full,
on or before the 14th July, 1868 ; that he was credited with
ten shares of stock paid in full, on the stock book of the
company ; that on the 19th March, 1869, the president,
and secretary and treasurer of the said company issued
and gave to the defendant the usual certificate for ten
shares of its capital stock, and that at the meeting at which
the defendant had voted for officers of the company, he
had voted ten votes only, representing ten shares of stock.

The defendant then gave in evidence an agreement, dated
the 26th day of July, 1869, between the plaintiffs and the
Antietam Manufacturing Company, whereby it appeared
that the company being indebted to the plaintiffs in the
sum of $4921.99, and being anxious to indemnify them
from loss by reason of such indebtedness, agreed to place
in their hands six thousand dollars of first mortgage bonds

of the said company, payable to the order of the plaintiffs; the bonds to be held by them as collateral security for the payment of said indebtedness, until the first day of June next; and if not redeemed by the company, on or before the said first day of June, they were to become the absolute property of the plaintiffs, with the privilege to them at any time before the said first day of June, to negotiate a sale, and sell them, or any part thereof, at such rates as might from time to time be fixed and prescribed by the said company, and to apply the proceeds arising from such sale, to the payment of the aforesaid debt and interest thereon, and the surplus of such sale after the payment of said indebtedness, if any should remain, to be paid over to the said company, and the said plaintiffs, in consideration of the above premises, agreed to waive any and all right, which they then had or might have to lay a mechanics' lien on the property of the Antietam Manufacturing Company, to secure their aforesaid claim.

And then gave in evidence three judgments against the defendant in actions, where he was sued upon his individual liability as stockholder of said Company, as follows: The first, a judgment in favor of Kelly & Howe, dated 14th December, 1869, for the sum of $314.10, with interest from date, and costs; the 2nd, a judgment in favor of B. F. Emmert, dated 2nd of August, 1873, for the sum of $119, with interest from the date and costs; and 3rd, a judgment by confession in favor of J. H. Beachley, dated 24th of March, 1874, for $481, with interest and costs.

The testimony being closed, the plaintiffs offered the following prayers:

1. If the jury find that the capital stock of the Antietam Manufacturing Company of Washington county as fixed and stated in its certificate of incorporation, was not fully subscribed for and not paid up; but also find that the said company was indebted as stated in the declaration,

and that such indebtedness occurred in June, 1869, by the delivery to the plaintiffs of the bonds mentioned in the declaration, and also find that at that time the defendant was a stockholder in the said company, and further find that whilst he was such stockholder the defendant with knowledge of the fact that the capital stock of the company had not been fully taken and subscribed for; yet participated in the affairs of the company, attended the meeting of the stockholders, and knew that the company was engaged in business, purchasing property and incurring liabilities, then such participation in the affairs of the company is a waiver of any defence on his part growing out of the fact that the capital stock of the company had not been subscribed for, and the plaintiffs would be entitled to recover to the extent of the defendant's subscription, less such amounts as he may have *bona fide* paid on account of said corporation.

2. If the jury find that the said capital stock has not been fully paid in, and further find that the said corporation became indebted as alleged in the declaration, whilst the defendant was a stockholder, and that the defendant participated in the affairs of said corporation by attending the meetings of stockholders, voting at the elections of said company, and paying in his subscriptions with knowledge that the capital stock was not fully paid in, and that said corporation was contracting debts, then the plaintiffs are entitled to recover on the bond sued on in this case, with interest thereon from the 1st day of January, 1872, the date of the maturity of said bond, provided, the jury further find that the defendant is liable to the creditors of said corporation for such an amount.

3. If the jury find that the said capital stock has not been fully paid in, and that the said corporation became indebted as alleged in the declaration, whilst the defendant was a stockholder, and that the defendant had knowledge that the whole of the capital stock was not paid in,

and knew that the said corporation was contracting debts
and building a large factory in Funkstown, and with such
knowledge paid the several instalments on his subscrip-
tion, then the same is a waiver by the defendant of the
requirement that the whole of the capital stock should be
subscribed.

(The fourth prayer is omitted.)

5.  And the jury are further instructed in regard to the
confession of judgment to Beachley, and the papers and
proceedings in the said case, that they furnish no evidence
standing alone, and without proof of the truth, fairness,
and *bona fides* of Beachley's claim or demand that the debt
thereby claimed and sued for, was due and owing by the
company, and unless the jury are satisfied by evidences
and proofs other than those furnished by the said docket
entries, papers and proceedings, that the company did,
and was at the time of the said confession, indebted to
Beachley to the amount of the judgment confessed, then
the amount confessed in that case, cannot and must not be
considered by the jury in this case.

6.  If the jury find that the defendant subscribed the
sum of fifteen hundred dollars to the capital stock of the
said company, there was no power in the board of direc-
tors of the said company, afterwards to release him from
payment thereof, and the defendant is answerable for the
debts of the said company to the full extent of his origi-
nal subscription, notwithstanding an application was made
by him or another in his behalf, to be released from the
payment of the full amount of his subscription, and such
application was assented to by the directors; nor is it any
answer or defence to the plaintiffs' right to recover in this
action, that Wm. M. McDowell, one of the parties plain-
tiff to the record in this case, was, at the time of such
application, a member of the board, and heard the applica-
tion and did not object, but acquiesced by his silence or
otherwise in the understanding that defendant should be

discharged from payment of five hundred dollars of his subscription.

And the defendant offered the following prayers:

1. The defendant prays the Court to instruct the jury, that if they find from the evidence that the defendant signed and acknowledged the certificate of incorporation of the Antietam Manufacturing Company, given in evidence, and that aftewards, to wit: on the 16th July, 1867, the defendant appeared before the board of directors of said company, at one of the meetings of said board, and then through James H. Grove, Esq., one of the directors, and the attorney for said Antietam Company, (if the jury shall so find) made application to said board to have the amount of his subscription and stock reduced from fifteen shares and fifteen hundred dollars, to ten shares and one thousand dollars, and that the said board so reduced said stock, and released the defendant from five shares and five hundred dollars of said stock, and further find, that W. M. McDowell, one of the plaintiffs in this action, was a member of the said board of directors, and was present at their said meeting, and assented to the said release of the defendant, and the said reduction of his stock; and shall further find, that afterwards, the president and secretary and treasurer of said company, issued to the defendant the certificate given in evidence for ten shares of the capital stock of said company, and no more, and that he, the defendant, is credited with ten shares, and no more, on the stock book of said company, and that he voted ten shares and no more, at one of the meetings for an election of directors of said company, then the plaintiffs are not entitled to recover anything from the defendant in this action, by reason of his subscription for the said five shares.

2. If the jury shall find that the capital stock fixed in the certificate of incorporation of the said company was $150,000, and that $96,000 of said stock was taken or sub-

scribed; and further find, that the defendant did sign and acknowledge said certificate of incorporation, and shall also find the facts set forth in the defendant's first prayer, then the plaintiffs are not entitled to recover against the defendant by reason of his subscription of the said five shares, unless the jury shall further find, that the defendant participated in the acts and proceedings of the said company in the contraction of debts in reference to his responsibility for the said five shares. .

3. If the jury shall find, that the defendant subscribed for the said five shares in May, 1867, and that the said subscription has never been paid, and that the defendant has not within three years promised to pay said subscription, nor acknowledged said subscription as a subsisting debt due the company, then the plaintiffs are not entitled to recover.

4. If the jury shall find that the bond sued on in this action was given (with others of the same kind) by said company to the plaintiffs, and received by the plaintiffs in payment, satisfaction and discharge of a claim or account which the said plaintiffs had at that time against said company; and that the plaintiffs received said bonds and their securities in lieu of said claim or account, then the plaintiffs thereby released this defendant from any liability for the payment of said claim or account, and the plaintiffs are not entitled to recover.

The Court granted all the prayers of the plaintiffs except the fourth, and rejected those of the defendant; the defendant excepted and the verdict and judgment being for the plaintiffs, he appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Hy. Kyd Douglas,* for the appellant.

The bond and the minutes of proceedings of the meeting of the 10th of October, offered in evidence by the plaintiffs

were not properly admissible. The company had no right to issue such bonds. The law of the State does not give the right. Sections 63-67 of Article 26 of the Code regulate the proceedings and power of stockholders when they desire to increase or diminish their capital stock, extend or change their business. That can only be done after a published notice of four weeks, and a written or printed notice sent to each stockholder three weeks before—such notice to specify the object of the meeting. And then the vote of at least two-thirds of the shares of stock shall be necessary to effect the purpose. The meeting of October 10th, was called upon 10 days "written notice," and there was in attendance only $40,700 of stock. At this meeting the proceedings took place, upon which the plaintiffs relied for the authority to issue the bond sued upon.

The object of the meeting of October 10th, was to raise money other than that raised by the subscription of stock. The bonds were to be made and given, not to existing creditors for their claims, but to be issued and sold to raise $60,000, in part to pay existing indebtedness, and the balance to be used as a working capital—in fact, to increase the capital and extend the business of the company. This action was in violation of the principle of law, that corporations can make no contracts which are not necessary to effect the object of their creation; and further, if these stockholders had any necessary incidental authority to issue these bonds, yet the statute restricted their action to a particular mode, which they did not comply with, and their action was *ultra vires*, and the bonds void. *Abbott's Digest of Corp., pg.* 208, *Sec.* 10, *pg.* 214, *Sec.* 60, *pg.* 237, *Sec.* 246; *Penn. & Md. Navig. Co. vs. Dandridge*, 8 *G. & J.*, 248; *Maryland Hosp. vs. Foreman*, 29 *Md.*, 528; *Holcomb vs. Managers, &c.*, 1 *Stockt.*, 457; *Salem Mill-Dam Co. vs. Ropes*, 6 *Pick.*, 23.

If no assessment can be made until the whole stock is taken, it follows that there was no power in the corpora-

tion to make contracts or issue bonds. *Abbott vs. Balto. St. Packet Co.*, 1 *Md. Ch. Dec.*, 542; *Dawes vs. N. R. Ins. Co.*, 7 *Cowen*, 464.

The first palpable objection to the plaintiffs' first prayer is, that it submits to the jury a question of law. What constitutes a waiver of defence by participation in the affairs of the company?—The Courts have uniformly treated the question of participation and consequent waiver as a question of law, and at times, a difficult one.

The Court of Appeals in the *Hager Case* (36 *Md.*, 491,) have laid down the definition of what constitutes participation which must govern us. Do not this and the two following prayers go beyond the limit? In order to render a stockholder liable by reason of his participation in the acts of a corporation, this Court has said that a stockholder must not only have knowledge that the whole capital stock has not been taken, but with such knowledge, he must do such acts " which could only be properly done upon the assumption that the subscriber intended to proceed with stock partially taken up.''

The plaintiff's prayer in this case, set up a different standard. They say in their first prayer, that if the defendant had "attended the meeting of the stockholders and knew that the company was engaged in business, purchasing property and incurring liabilities," that was participation enough to constitute a waiver of his defense. Knowledge is not participation, although participation must be with knowledge. Here, the only act of participation charged, is attending the meetings of the company. The defendant is not charged with engaging in business or taking part in purchasing and incurring liabilities. He may have attended the meetings of the company, but it does not follow that he assented to the making of contracts and debts. He may have opposed them or protested, yet he would be responsible under this prayer. *Hager vs. Cleveland & Bassett*, 36 *Md.*, 491; *Pitchford vs. Davis*,

5 *Mees. & W.*, 2 ; *Cabot, &c. vs. Chapin*, 6 *Cush.*, 50 ; *Atlantic Mills vs. Abbott*, 9 *Cush.*, 423 ; *Oldtown R. R. Co. vs. Veazie*, 39 *Maine*, 582.

Participation, waiver, estoppel, those are synonymous as to the principle of law involved. To bind a party or defeat his defence because of the technical effect of some of his acts, it is necessary that he must have done some open, unequivocal act, with full knowledge of all the facts affecting his rights. The Court below gave no such warning to the jury. *Howard vs. Carpenter*, 11 *Md.*, 279 ; *Reynolds vs. Insurance Co.*, 34 *Md.*, 289 ; *Middlesex Turnpike Cor. vs. Swan*, 10 *Mass.*, 384 ; *Welland Canal Co. vs. Hathaway*, 8 *Wend.*, 480 ; *Bigelow on Estoppel*, 506, 525, 538 ; *Haxie vs. Home Ins. Co.*, 32 *Conn.*, 21.

In the second and third prayers of the plaintiffs, the jury were told, that if the defendant participated in the affairs of the corporation " with knowledge that the capital *stock was not fully paid in,*" then he had waived his defence ; or as it is put more strongly in the third prayer. if the defendant *paid the instalments on his subscription* with knowledge that the *whole capital stock was not paid in,* then the same was a waiver of the requirement that the whole of the capital stock should be *subscribed.*

The capital stock must be *subscribed,* before the corporation is complete ; it is not necessary that it should be wholly *paid in.* A stockholder may know that the capital stock is not paid up (for he may not have paid all his instalments,) and yet, not know that it is not all subscribed. And the Court say he must do the pregnant acts which constitute participation, with knowledge that the stock is not taken ; knowledge that it is not all paid in, does not estop him. These two prayers are therefore manifestly erroneous.

The plaintiffs' sixth prayer and the defendant's first prayer, raise the same question. The evidence shows that when the defendant went to pay the first instalment on his

subscription for 15 shares, he applied to the board of directors, through their attorney, to be released of five shares, that he was so released, that he paid up the balance of his subscription, and that subsequently he received a certificate for ten shares, and only acted with reference to the ten shares thereafter.   The plaintiffs now seek to recover the amount of the other five shares, charging that the release was illegal.

When the defendant applied to have his subscription reduced, the whole capital stock had not been subscribed. The subscription of every subscriber at that time was conditional, and as no stockholder could be held responsible until the whole of the stock was taken, no one was injured by the release of Garling.   The release was granted before the debt due to the plaintiffs was contracted.   *Oldtown R. R. Co. vs. Veazie,* 39 *Maine,* 571; *Pen. & Kenn. R. R. Co. vs. Dunn,* 39 *Maine,* 587; *Phil., &c, R. R. vs. Hickman,* 28 *Pa. St.,* 318; *Penobscot & Kenn. R. R. vs. Bartlett,* 12 *Gray,* 244; *Salem Mill-Dam Co. vs. Ropes,* 6 *Pick.,* 23.

McDowell, one of the plaintiffs, was a member of the board of directors, present at their meeting and consented to the release of the five shares; and the plaintiffs are estopped from disputing the validity of that release.   This proposition seems to be sustained by numerous authorities, and it is but fair and right that the plaintiffs ought not to be permitted to declare that to be irregular and void which they directly sanctioned, and to profit by an act of the defendant which they induced him to do.   *Bigelow on Estoppel,* 500, 501, 511, 522; *Pickard vs. Sears,* 6 *A. & E.,* 469; *Gregg vs. Wells,* 10 *A. & E.,* 90; *Colton vs. Beardsley,* 38 *Barb.,* 29; *Rensselaer, and Wash. Plank Road Co. vs. Wetsel,* 21 *Barb.,* 56; *Walter vs. Alexander,* 8 *Gill,* 239; *Niven vs. Belknap,* 2 *John.,* 588; *Frost vs. Saratoga Mut. Ins. Co.,* 5 *Denio,* 156.

The whole capital stock of the company not having been subscribed, the defendant is not liable, unless he waived

his defence by participating in the operations of the company. But he was only a stockholder for ten shares, as he thought—he had a certificate for that number only—he voted and acted with reference to ten shares only, and if his acts make him liable, can it be said that he is liable for an interest which he did not have, and is he to be presumed to have acted with reference to stock which he did not know he possessed, and which was not recognized by the company ?

The defendant's third prayer presents the proposition, that as the Statute of Limitations would bar a recovery of the subscription for the five shares on behalf of the company, the plaintiffs are not entitled to recover as to the said shares. The liability of a stockholder to a creditor, arises out of, and depends upon his liability to the corporation. He can only be reached through the company ; if not responsible for his subscription, he is not responsible for debts. Can there be any question, that if the defendant had been sued by the corporation for his unpaid subscription for five shares, the Statute of Limitations would have been a good defence ? If so, why is it not a good defence in this case as to the five shares? *Basshor vs. Forbes*, 36 *Md.*, 165 ; *South Car. Manf. Co. vs. Bank of S. C.*, 6 *Rich. Eq.*, 227 ; *Abbott's Dig. Law of Corp.*, 398, sec. 213.

The defendant's fourth prayer instructs the jury, that if the plaintiffs received the bonds in payment, satisfaction and discharge of their claim, and took them and their securities (by the mortgage) in lieu of said claim, then, by doing so, they released the defendant from his individual liability. .

The facts were for the jury to find, and were submitted to them, but if they found them, as stated in the prayer, then the plaintiffs had waived and abandoned all right to proceed against the defendant on his original liability. *Basshor vs. Forbes*, 36 *Md.*, 165 ; *Berry vs. Griffin*, 10 *Md.*,

Garling *vs.* Baechtel, *et al.*

27 ; *Yates vs. Donaldson,* 5 *Md.,* 396 ; *Davidson vs. Kelly,* 1 *Md.,* 500.

*George W. Smith* and *Attorney General Syester,* for the appellees.

The first, second and third prayers of the appellees were correct. *Hager vs. Cleveland & Bassett,* 36 *Md.,* 476.

In respect of the sixth prayer—The directors had no power to release the defendant from any part of his original subscription ; the subscription was no contract with them ; but a contract with other subscribers ; a contract with every other member of the company, each of whom had the right to expect and require every dollar of that original subscription to be paid. The appellant's obligation was to the company, and the directors could only manage the affairs of the company ; they had nothing to do with releasing subscribers. *Hughes vs. Ant. Manf. Co.,* 34 *Md.,* 316, and authorities there cited.

The fact that McDowell, one of the appellees was present when the application for a release was made, and that he did not object, can have nothing to do with the case ; his assent to such a proposition could work no estoppel as against other members of his firm. It is not even shown that the assent of all the directors tended to mislead the appellant, or that he thereby assumed a position he would not otherwise have taken. It is not shown that his relations with even the company were thereby changed in any respect, and certainly as between him and the appellees (the parties against whom he sets up the estoppel,) that circumstance cannot be relied on as affecting their relations in the slightest degree.

The fifth instruction did the appellant no harm whatever, for even admitting that it may not announce the true law, yet, it will be seen that all the judgments existing against the appellant amounted to but $914.10, whilst his subscription was for $1,500, leaving a balance to answer

this action of $585.90; and the judgment recovered was for $586.30. The instruction was right. The judgment in favor of Beachley was good only as between the parties. It was a *confession*, and nothing more than the case of one man saying that another owes him, and a third party assenting to it.

The second prayer of the defendant proceeds on the idea, that the action of the directors was sufficient to discharge the appellant from his obligations to the company; and that he could be chargeable with the $500 in this case, only in the event that he considered himself still bound for it; and that his participation in the affairs of the company, "had reference to his responsibility for the said five shares."

In other words, this prayer proceeds on the idea, that the directors had power to release, and that they did release, but that the appellant, notwithstanding such release, may have bound himself to the creditors of the company, by disregarding the release; and that evidence that he disregarded the release, was to be found in the fact, that in respect to that very sum of $500 he subsequently participated, &c. It is, in effect, saying, that if *the directors released,* then the appellant was released, unless he considered himself still responsible; and as the record contains no such evidence, the action of the directors was all-sufficient.

In regard to the appellant's third prayer—the appellant subscribed in May, 1867. The last instalment appears to have been due in July, 1868. This action was instituted 5th August, 1873, more than three years after the last instalment was due; and because the directors had not collected this $500 for the company, it was asserted that the Statute of Limitations applied. The Court refused to say so. The Statute is not set up as against the right of the company to require payment. Such a demand might be obnoxious to the Statute; the claim would be of more than

three years standing. But the cause of action here is the *bond* of the company, to which the Statute does not apply in three years.

To the plaintiff's demand the Statute is no answer at all, as limitations. The plea of limitations must apply to the demand of the plaintiff—not to the demand of some other person or party. If the company did not see fit to press its claim, and allowed it to grow stale, is the creditor to be prejudiced? Suppose the company had never issued any call, would the creditor be without remedy? The Statute applies only to plaintiff and defendant; the laches of third parties has nothing to do with it. The debts sued for here, is in the nature of a contract between the plaintiffs and the defendant. *Norris vs. Johnson*, 34 *Md.*, 485; *Norris vs. Wrenschall*, 34 *Md.*, 492.

It is sufficient to say that the evidence to the admission of which the first exception was taken, was offered to show that the bond sued on in this case, was issued by *authority*, in obedience to the direction of the stockholders themselves, and was not the unauthorized act of the directors.

ROBINSON, J., delivered the opinion of the Court.

This suit is brought under the provisions of Art. 26, sec. 52 of the Code, to recover of the appellant individually as a stockholder of the Antietam Manufacturing Company, a debt due to the appellees by said company.

The company was organized under Art. 26 of the Code, and by the articles of association the capital stock was fixed at 1500 shares of the par value of $100 per share, of which, however, but 960 shares *were* taken.

We have heretofore decided that in regard to companies of this character, where the capital stock was fixed at a certain number of shares of a certain value per share, no action would lie against a subscriber to enforce the payment of his subscription, until the whole capital stock was taken.

It. appears, however, that the directors undertook to organize this company upon a partial subscription of the capital stock; and it is contended that the appellant having participated in said organization, knowing that the whole capital stock had not been taken, and having attended the meetings of the stockholders at which money was voted and contracts made for the purchase of property and materials necessary to carry on the business of the company, he is now estopped in a suit by a creditor from setting up as a defence, the partial subscription of the capital stock.

Conceding this to be true, the question then arises as to the extent of the appellant's liability in this action. The Code provides that the stockholders shall be severally and individually liable to the creditors of the company to an amount equal to the amount of capital stock held by them. *Sec.* 52, *Art.* 26, *Code.*

It appears that the appellant originally subscribed for *fifteen shares* of the par value of fifteen hundred dollars, but on the 16th July, 1867, at the first meeting of the board of directors at which he attended, and before the debt due to the appellees was contracted, and in fact, so far as this record discloses, before any debts had been incurred by the company, the appellant made application to have his subscription reduced from *fifteen* to *ten* shares. W. M. McDowell then and now one of the firm of the appellees, was a member of the board of directors, and was present when this application was made. It further appears, that this application was assented to without a dissenting voice, whereupon the appellant paid the first instalment due on his subscription of *ten shares,* and the subsequent instalments as they became due. In addition to this, the secretary issued to him a certificate of *ten shares,* and at the only meeting of the stockholders at which he voted, he was permitted, and only claimed the right as a stockholder, to vote ten shares.

Now it is too clear for argument, that at the time this application was made by the appellant to reduce his original subscription from fifteen to ten shares, and assented to by the board of directors, he was not liable for one dollar on account of the subscription of fifteen shares, for the reason that the whole capital stock had not been taken, and no debts had been incurred by the company. If then he is to be held liable as stockholder *solely* upon the ground of having participated in the organization and business of the company, knowing that it was incurring debts for the purchase of property and materials necessary to carry on the business of the company, he cannot be liable for any greater amount than the par value of the stock held by him, and upon the basis of which he participated in the affairs and business of the company.

This being so, the extent of the appellant's liability in this action must be limited to the *ten shares* of stock of the value of one thousand dollars, after deducting therefrom such sum or sums of money as he may have been compelled to pay as a stockholder, to other creditors of the company, and the amount or amounts of such judgments as they may have obtained against him. There was error then in granting the plaintiffs' first, second, fifth and sixth prayers. There was error also in granting the third prayer. The mere fact that he paid his subscription, knowing that the whole capital stock had not been paid in, and that the company was incurring debts for property and materials, were not such acts of participation as to estop him from setting up as a defence in this action the partial subscription of the capital stock. We have heretofore said, that where a stockholder attends the meetings of the company, knowing the whole capital stock had not been taken, and votes for the expenditure of money for the purchase of property and materials necessary to carry on the business of the company, he will be estopped from setting up as a defence, the fact that the whole capital stock had not been

taken. *Hager vs. Cleveland & Bassett*, 36 *Md.*, 476. There must, however, be some act or acts, or participation on his part, upon the faith of which debts were contracted, to estop him from setting up such a defence. The facts set forth in the plaintiffs' first prayer were sufficient in our opinion, if found by the jury, to render the defendant liable as a stockholder, and there is evidence in the record *legally sufficient* to submit the finding of such facts to the jury.

From what we have said, it follows that the defendant's first prayer ought to have been granted. As to the second prayer, the defendant ought not to complain that it was refused by the Court. It must have been presented in the alternative of the refusal by the Court to grant his first prayer. There is not a particle of evidence to prove that he ever participated in the affairs of the company upon the basis of his responsibility for fifteen shares, and he was certainly conceding to the plaintiffs more than they were entitled to ask.

The third prayer was properly refused. The suit was brought upon a bond issued by the company, for a debt incurred by the directors, and this bond was not barred by the Statute of Limitations. Whether limitations would have been a bar to an action brought by the company to enforce the payment of the defendant's subscription, three years having elapsed from the time such subscription had been made, is a question not presented by the pleadings in this case.

We find no error in the refusal to grant the fourth prayer. There is no evidence to show, that the plaintiffs ever accepted the bond upon which the suit was brought in payment of the debt due to them by the company.

The demurrer to the defendant's plea in abatement was properly sustained. The fact that another creditor had filed a bill in Equity in behalf of himself and other creditors who might come in and contribute to the expenses of

the suit, in no manner affected the right of these plaintiffs to sue the defendant in an action at law for a debt due to them by the company.

We concur with the Court in its ruling under the first bill of exceptions. The bond sued on was signed by the president, secretary and treasurer of the company, and it was admissible in evidence for the purpose of proving an acknowledgment on the part of the company of an indebtness to the appellees, and the minutes of the proceedings of the stockholders were admissible to prove the circumstances under which the bond was issued.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 15th January, 1875.)